# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Javier Angulo Jr., | ) | Case No. 1:22-cv-00923 |
| Plaintiff, | ) | |
| vs. | ) | Judge Virginia M. Kendall |
| | ) | |
| Equifax Information Services, LLC, | ) | |
| and Truist Bank d/b/a Sheffield Financial | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT TRUIST BANK D/B/A SHEFFIELD FINANCIAL'S MOTION FOR JUDGMENT ON THE PLEADINGS

**STEIN SAKS, PLLC**

*/s/ Yaakov Saks*
By: Yaakov Saks, Esq.
One University Plaza, Ste 620
Hackensack, NJ 07601
Phone: (201) 282-6500 ext. 101
Fax: (201)-282-6501
ysaks@steinsakslegal.com

# I.    <u>INTRODUCTION</u>

Defendant Truist Bank d/b/a Sheffield Financial ("Sheffield") seeks dismissal of this claim brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, based on the argument that Plaintiff Javier Angulo ("Angulo") has not established an inaccuracy in his credit report, a preliminary threshold issue that must be established before proceeding with claims under the FCRA.  Defendant argues that no reasonable creditor would be misled into believing that the account status section of the credit report indicates a 30-day delinquency, as Plaintiff claims, because other indicia, such as the $0 balance and closed status of the account, indicates that the Sheffield was 30 days delinquent at some point in the past.  As will be set forth in more detail below, the credit report attached by Defendant to its motion is far from giving the kind of explanation Defendant attributes to it, and requires an inference that the debt was paid off that is not made explicit in the report itself.  These and other deficiencies in the facts and law of this case demand a denial of Defendant's motion.

# II.    <u>STATEMENT OF FACTS</u>

Defendant Equifax Information Services, LLC prepared and issued a credit report that contained inaccurate and materially misleading information regarding Plaintiff's account with Defendant Sheffield.  Dkt. # 1, ℙ 11.  The information was inaccurate because the account status section indicates that the Sheffield account is 30 days past due despite the fact that it had been paid and closed.  *Id.* at ℙℙ 12, 13, 14.  Far from being viewed in a wholistic fashion by potential creditors, the account status section is the subject of ministerial calculations by credit-scoring algorithms which take it for granted that the account status reflects the current status of the account.  *Id.* at ℙ 16.  The algorithms then generate a credit score based on that assumption.  *Id.*  Virtually all lending decisions by creditors are based on these automatically generated scores.  *Id.* at ℙ 17.

Plaintiff disputed Defendant's inaccurate credit reporting by sending a dispute letter to Defendant Equifax dated June 4, 2021. Dkt. # 1, ¶ 19. It is believed that Defendant Equifax notified Sheffield of the disputed inaccuracy. *Id.* at ¶ 20. Sheffield failed to conduct a reasonable investigation into Plaintiff's dispute and continued reporting the inaccurate, derogatory information. *Id.* at ¶¶ 21, 22.

## III.   STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) is treated under the same standard of review as a motion to dismiss under Rule 12(b)(6). *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). The Court must accept as true all factual allegations made in the Complaint, with the exception of "legal conclusions or threadbare recitals of the elements of a cause of action supported by mere conclusory statements[,]" and draw all reasonable inferences in favor of the non-moving party. *Forest River Mfg., LLC v. Lexmark Enter. Software, LLC*, No. 3:16-CV-449 JD, 2017 U.S. Dist. LEXIS 71019, at *5-6 (N.D. Ind. May 9, 2017)(citing *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir.2011); quoting *McCauley v. City of Chi.*, 671 F.3d 611, 615 (7th Cir.2011)). To survive such a motion, "the complaint must contain enough facts to state a claim for relief that is plausible on its face." *Forest River*, No. 3:16-CV-449 JD, 2017 U.S. Dist. LEXIS 71019 at *5 (citing *Brooks v. Ross*, 578 F.3d 574, 580-81 (7th Cir. 2009)(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCauley*, 671 F.3d at 616.

## IV.   LEGAL ARGUMENT

**A.  REPORTING A PAID-OFF DEBT AS 30-DAYS PAST DUE IS PATENTLY INACCURATE AND MATERIALLY MISLEADING UNDER THE FCRA**

"The FCRA sets forth duties of those who furnish credit information." *Asufrin v. RoundPoint Mortg. Servicing Corp.*, No. 15 C 9077, 2016 U.S. Dist. LEXIS 34420, at *7 (N.D. Ill. Mar. 17, 2016)(citing 15 U.S.C. § 1681s—2(b)).  "Under the FCRA, after a furnisher, like Defendant, receives notice from a CRA that a consumer disputes the information provided by the furnisher to the CRA, the furnisher must conduct a reasonable investigation and report the results of that investigation back to the CRA." *Asufrin*, No. 15 C 9077, 2016 U.S. Dist. LEXIS 34420 at *7 (citing 15 U.S.C. §§ 1681i(a)(2), 1681s—2(b)).  Specifically, "[a]fter receiving notice of the dispute, the furnisher is required to … conduct an investigation with respect to the disputed information;" "review all relevant information provided by [the CRA];" "report the results of the investigation to the [CRA]; and" "if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis."  No. 15 C 9077, 2016 U.S. Dist. LEXIS 34420 at *8 (quoting 15 U.S.C. § 1681s—2(b)(A)-(D)).

"To prevail in an FCRA claim against a furnisher of credit information under section 1681s-2(b), plaintiffs must show the 'factual inaccuracy' of the information the furnisher provided." *Mileva v. Trans Union, LLC*, No. 20-cv-123, 2021 U.S. Dist. LEXIS 59503, at *13 (N.D. Ill. Mar. 29, 2021)(citation omitted).  "Although the Seventh Circuit has not decided whether FCRA liability can arise from a technically accurate but misleading report, numerous decisions in this District hold that it can." *Plotzker v. Equifax Info. Servs. LLC*, No. 19 C 4554, 2020 U.S. Dist. LEXIS 56936, at *8 (N.D. Ill. Apr. 1, 2020)(citing cases).  This Court should be guided by the

same basic principles and use the materially misleading standard to determine whether Plaintiff's credit report is inaccurate.

Under this widely adopted standard, courts across the country have upheld similar claims. For instance, *Soler v. Trans Union, LLC*, No. CV 20-8459 DSF (PLAx), 2020 U.S. Dist. LEXIS 232987 (C.D. Cal. Dec. 1, 2020) held that it was materially misleading to continue reporting an account 120 days past due several years after the account had been closed and the debt was satisfied. *Soler*, No. CV 20-8459 DSF (PLAx), 2020 U.S. Dist. LEXIS 232987 at *5-7. The court specifically rejected the distinction Defendant makes here – that the "Pay Status" section merely reflects a historical delinquency that existed at the time the debt was paid. No. CV 20-8459 DSF (PLAx), 2020 U.S. Dist. LEXIS 232987 at *5-7.

In *Mund v. Transunion*, No. 18-cv-6761(BMC), 2019 U.S. Dist. LEXIS 31289 (E.D.N.Y. Feb. 27, 2019), the court held that it was impossible to report an account 120 days delinquent when it was closed with a $0 balance because an account cannot be currently delinquent when it has no balance. *Mund*, No. 18-cv-6761(BMC), 2019 U.S. Dist. LEXIS 31289 at *2. The court rejected the defendant's argument (a species of the same historical information argument made here) that the account was reported accurately in light of additional notations on the account regarding transfer and $0 balance, and reasoned that even if true, the way the information was being reported was nevertheless materially misleading to potential creditors. No. 18-cv-6761(BMC), 2019 U.S. Dist. LEXIS 31289 at *6-7 ("Her point is that, even if this information is factually or technically accurate, the way in which that information appears on the credit report is misleading in a material way to potential lenders. This is enough to withstand defendant's motion to dismiss.").

*Barrow v. Trans Union, LLC*, No. 20-CV-3628, 2021 U.S. Dist. LEXIS 72503 (E.D. Pa. Apr. 9, 2021) came to a similar conclusion. There the court held that it was materially misleading

to continue reporting an account that had been fully satisfied as 120 days delinquent "six years after the account was closed." *Barrow*, No. 20-CV-3628, 2021 U.S. Dist. LEXIS 72503 at *9-10. Relying on *Seamans v. Temple University*, 744 F.3d 853 (3d Cir. 2014), the court adopted the plaintiff's reasoning that "is extremely misleading because it makes it look like the Plaintiff is still late on this account that was previously fully satisfied." *Barrow*, No. 20-CV-3628, 2021 U.S. Dist. LEXIS 72503 at *10 (citing *Seamans*, 744 F.3d at 865). "Thus, even assuming the truth of the defendant's assertion that at the time Plaintiff's account was marked satisfied it was 120 days' overdue, the Complaint here nevertheless alleges sufficient facts to sustain the plausible inference that the report was materially misleading and to thereby give rise to a cause of action against Trans Union pursuant to Sections 1681n and 1681o of the FCRA." *Barrow*, No. 20-CV-3628, 2021 U.S. Dist. LEXIS 72503 at *16. Notably, the *Barrow* court refused to take sides on the plaintiff's or defendant's characterization of the record, and, reviewing a whole host of different tradelines, reasoned that the credit report was susceptible to multiple different readings, and a motion to dismiss was not the proper vehicle to resolve that dispute. *Barrow*, No. 20-CV-3628, 2021 U.S. Dist. LEXIS 72503 at *13-14.

Relying on *Mund*, the court in *Friedman v. Citimortgage, Inc.*, No. 18 CV 11173 (VB), 2019 U.S. Dist. LEXIS 149706 (S.D.N.Y. Sep. 3, 2019) upheld a similar claim. The court reasoned that the

> plaintiff sufficiently alleges the trade line on his credit report is misleading in a way that could adversely affect lenders' credit decisions. According to plaintiff, because CitiMortgage continues to report that plaintiff owes a balance—even if that balance is $0—and reports that balance as 120 days late, lenders believe plaintiff is currently delinquent, negatively affecting potential lenders' perception of plaintiff's creditworthiness.

*Friedman*, No. 18 CV 11173 (VB), 2019 U.S. Dist. LEXIS 149706 at *7-8.

The court was quick to reject the argument that the plaintiff had not sufficiently alleged an inaccuracy based on the materially misleading standard, where even technically accurate reporting could nevertheless be misleading to the reasonable creditor. *Friedman*, No. 18 CV 11173 (VB), 2019 U.S. Dist. LEXIS 149706 at *7-8 (adopting the widely used materially misleading standard even though the Second Circuit had not officially endorsed its use). Perhaps more significant was the *Friedman* court's implicit rejection of the historical information argument, recognizing that "because CitiMortgage continues to report that plaintiff owes a balance—even if that balance is $0—and reports that balance as 120 days late, lenders believe plaintiff is currently delinquent, negatively affecting potential lenders' perception of plaintiff's creditworthiness." No. 18 CV 11173 (VB), 2019 U.S. Dist. LEXIS 149706 at *8.

Building on *Mund* and *Friedman*, *Huggins v. FedLoan Servicing*, Civil Action No. 19-21731 (ES) (CLW), 2020 U.S. Dist. LEXIS 229290 (D.N.J. Dec. 2, 2020) held that reporting "… a $0 balance and a pay status of 120 days delinquent … paints a materially misleading picture of [the plaintiff's] pay status in that it may lead potential lenders to believe [the plaintiff] is currently late on his payments." *Huggins*, Civil Action No. 19-21731 (ES) (CLW), 2020 U.S. Dist. LEXIS 229290 at *16. The court particularly noted that the plaintiff "contends that he *did* bring [the account] current by transferring [the loan to another lender] to reflect a balance of $0." *See Huggins*, Civil Action No. 19-21731 (ES) (CLW), 2020 U.S. Dist. LEXIS 229290 at *18 (emphasis in original)(distinguishing *Settles v. Trans Union, LLC*, No. 3:20-cv-00084, 2020 U.S. Dist. LEXIS 220341, at *10 (M.D. Tenn. Nov. 24, 2020)(noting that the "[p]laintiff admits that never brought the account current — instead, he defaulted, and the account was closed while it was more than 120 days past due.")). Therefore, assuming *arguendo* that the account status reflects

historical information only, the account actually *had* been brought current by virtue of the transfer. *Huggins*, Civil Action No. 19-21731 (ES) (CLW), 2020 U.S. Dist. LEXIS 229290 at *18.

Caselaw decided as recently as this year has confirmed same. In *Diamond v. Austin Capital Bank*, No. 3:21-547-CMC, 2022 U.S. Dist. LEXIS 111046 (D.S.C. Feb. 3, 2022), the court held that it was materially misleading to continue reporting a charged-off account as 30 days past due when it had subsequently been paid off with a $0 balance. *Diamond*, No. 3:21-547-CMC, 2022 U.S. Dist. LEXIS 111046 at *18-19. Even with the remark "paid and closed" noted on the credit report and historical 30-day delinquencies noted for certain months, it was unclear whether the account status section connoted historical or current information. No. 3:21-547-CMC, 2022 U.S. Dist. LEXIS 111046 at *18-19. This was true considering the credit report as a whole. *Id.* at *18-19. The court also notably came to this conclusion at the summary judgment stage with a number of different admissions conceded by the plaintiff. *Id.* at *12-15. None of those admissions answered the critical issue of accuracy. *Id.* at *20 ("Neither does ACB clarify how and why it reached its conclusion that the reporting was accurate…).[1]

---

[1] Other courts have followed the reasoning of this line of cases. *See Smith v. Trans Union, LLC*, No. 20-4903, 2021 U.S. Dist. LEXIS 51937, at *6-7 (E.D. Pa. Mar. 19, 2021)(rejecting the defendant's historical information arguments and finding that at the pleading stage, the plaintiff had sufficiently alleged that reporting an account as 60 days past due was materially misleading when the account had been closed with a $0 balance); *see also Drexler v. Trans Union, LLC*, No. 8:20-cv-2366-30JSS, 2020 U.S. Dist. LEXIS 248631, at *3-4 (M.D. Fla. Dec. 15, 2020)(rejecting Transunion's arguments that the only reasonable interpretation of the credit report was that the account was 60-89 days delinquent at the time the account was transferred, and deferring the question of whether such reporting was materially misleading to summary judgment); *see also Macik v. JPMorgan Chase Bank, N.A.*, No. G-14-044, 2015 U.S. Dist. LEXIS 185257, at *7-8 (S.D. Tex. May 28, 2015)(even considering that the "[plaintiff] has acknowledged that the information concerning the 90 days past due status on her mortgage with Chase was correct in 2009," finding that "the cornerstone of her claim [which the defendant ignores] is that, given the manner in which Chase has presumably coded her prior account, the information is inaccurately being reported as a 'current' delinquency in 2013").

This case is no different. Just as *Soler*, *Barrow*, *Mund*, *Friedman*, *Huggins*, and *Diamond* concluded, it is patently inaccurate and materially misleading to continue reporting the Sheffield account as 30 days past due when the account has been paid off in its entirety and closed out with a $0 balance. This is especially true in the context of full payment on the debt. Courts have repeatedly recognized a distinction between debts that have been paid off and those that haven't, reasoning,

> Here, the debt was paid in full to the penny at the time it was closed, and yet the "Pay Status: Account 60 Days Past Due" notation would lead one to believe the account was past due and continued to be past due, or not fully paid, when the balance was zeroed out when it was closed. This is clearly a black mark on the credit report of an individual seeking credit.

*Smith*, No. 20-4903, 2021 U.S. Dist. LEXIS 51937 at *9-10; *see also Barrow*, No. 20-CV-3628, 2021 U.S. Dist. LEXIS 72503 at *14 (upholding similar claim on an account that was fully satisfied with a $0 balance); *see also Soler*, No. CV 20-8459 DSF (PLAx), 2020 U.S. Dist. LEXIS 232987 at *5-7 (same); *see also Gatanas*, No. 20-07788 (KM) (JBC), 2020 U.S. Dist. LEXIS 228973 at *6-7 (upholding similar claim on an account that was closed and fully satisfied with a $0 balance).

Defendant continually advances the argument that a reasonable creditor would *resolve on its own* the apparent discrepancy in Plaintiff's credit report regarding the account's current status by reference to additional fields. In the process, Defendant concedes the point. As one court recently explained,

> TransUnion insists that such an interpretation would be unreasonable in light of the notations in the report showing that the account is closed with a zero balance. But that is part of the problem: even TransUnion acknowledges that the pay status field is confusing, if not inaccurate, *unless* one reads into it an understanding that it refers to Sokol's account's historical status.

*Sokol v. TransUnion, LLC*, Civil Action No. 21-23535-Civ-Scola, 2022 U.S. Dist. LEXIS 46963, at *15 (S.D. Fla. Mar. 16, 2022). But the final conclusion that Defendant comes to, the accurate one, *to wit*, that the account status indicates that the account was "paid and closed," is nowhere to

be found in the credit report itself. *See* Dkt. # 17-1, at 8-9. *See Soler v. Trans Union, LLC*, No. CV 20-8459 DSF (PLAx), 2020 U.S. Dist. LEXIS 232987, at *5-7 (C.D. Cal. Dec. 1, 2020)("Without Trans Union's annotation, explanation, and supplemental documentation, a jury could find that the Credit Report on its face is misleading in such a way that it adversely affects [the plaintiff's] credit.").

Indeed, Defendant makes frequent reference to the apparent contradictions in the credit report, but then, in Orwellian fashion, uses those contradictions to strip the inaccuracy of all meaning. It's as if the reasonable creditor is being called upon subsume the obvious deficiency in the account status section within other, contradictory information in the credit report. This flawed approach was pointed out by the *Sokol* court, which explained:

> Implicit in these decisions appears to be an acknowledgement that the pay-status fields, remarking that the accounts are X-number of days past due, can only be harmonized if they are interpreted to refer to the historical statuses of the accounts. For example, in one case, a court remarks on the internal inconsistency, noting that "an account with a $0 balance cannot currently be past due," because, after all, "what would the debtor have to pay to bring the account current?" *Ostrander*, 2021 WL 3271168, at *8 (cleaned up). Indeed, this crystallizes the heart of the issue: declaring that a closed and fully paid off account is "60 Days Past Due Date," at bottom, does not make sense. Without more, it seems likely to prompt a reviewer to, at a minimum, presume a mistake of some sort: either the account is not actually closed, as reported, and is indeed still X days past due; or the account is not actually still X days past due, as reported, but is, indeed, really closed.

*Sokol*, Civil Action No. 21-23535-Civ-Scola, 2022 U.S. Dist. LEXIS 46963 at *12-13. But therein lies the rub. Is it really to be presumed that a reasonable creditor, concededly confused by a contradictory line item in the credit report (if not, why bother to harmonize the status section with the rest of items on the credit report?), would necessarily read the other line items as swallowing and altogether erasing that contradiction, or, would the reasonable creditor, as *Sokol* wisely pointed out, conclude that the status section communicates some additional piece of information not

otherwise conveyed in the credit report? *Sokol*, Civil Action No. 21-23535-Civ-Scola, 2022 U.S.

Dist. LEXIS 46963 at *14.  As *Sokol* explained,

> Sokol's historical delinquency is recorded in the remark describing his maximum delinquency of 60 days in January 2020. It would, therefore, not be unreasonable for a reviewer to infer that the delinquency noted in the pay-status field indicates something independent from and in some way supplementary to Sokol's historical delinquency. And if it's not a historical assessment, then, certainly, a reasonable inference would be that it is in some way a current assessment of Sokol's account status or the status in which he left the account upon closing it.

Civil Action No. 21-23535-Civ-Scola, 2022 U.S. Dist. LEXIS 46963 at *14-15.  Defendant's

interpretation erases the status section altogether, and pretends that it doesn't exist.

Defendant's position is further belied by the fact that Plaintiff is challenging the technical

accuracy of the 30-day delinquency in December 2019, which distinguishes this case from others.

*Compare* Dkt. # 1, ¶ 14 *with cf. Pineda v. Trans Union, LLC*, No. 2:21-cv-653-SPC-MRM, 2021

U.S. Dist. LEXIS 233631, at *5 (M.D. Fla. Dec. 6, 2021)("[Plaintiff] doesn't deny that the account

was past due when it was paid off and closed with a $0 balance in September 2015.").  The

Experian credit report is therefore not just materially misleading, it is plainly inaccurate.

Defendant also argues that it is fairly obvious that a reasonable creditor would conclude

that because of the $0 balance and closed notation, that the account had been paid off.  But without

a notation explaining that the account had been paid off, which the credit report glaringly omits,

or indeed any indication of the final amount due or monthly amount owing, *see* Dkt. # 17-1, at 8-

9 (showing a "Actual Payment Amount" of $177 but no data for "Amount Past Due" or "Scheduled

Monthly Payment"), a reasonable creditor could very well assume that the final payment of $177

was deficient in some way and that the account had been transferred to another lender and still

*remained delinquent* at the time of transfer.  Moreover, the payment itself, on the very same day

that the account was closed out with a zero balance, extinguished any remaining delinquency on

the account, *see Huggins*, Civil Action No. 19-21731 (ES) (CLW), 2020 U.S. Dist. LEXIS 229290 at *18, so to continue reporting it as delinquent, even if it is historical information, is inaccurate.

### C. ALGORITHMS THAT CALCULATE CREDIT SCORES INTERPRET THE "PAY STATUS" SECTION AS A CURRENT DELINQUENCY, NEGATIVELY IMPACTING CREDIT SCORES

Credit-scoring algorithms are directed to interpret the account status section as the current status of the account, regardless of additional notations on the tradeline. This is an unavoidable reality of the credit reporting industry, which relies on these algorithms to generate credit scores, which are in turn used for making credit decisions. The reporting of a delinquency in the account status section is therefore not only harmful derogatory information, but represents a *de facto* inaccuracy.

Cases involving deviation from the Metro 2 Guidelines where the industry standard is to follow those guidelines to a tee, regardless of any additional notation in the report, are instructive. In *Cristobal v. Equifax, Inc.*, No. 16-cv-06329-JST, 2017 U.S. Dist. LEXIS 63571 (N.D. Cal. Apr. 26, 2017), the court noted

> Under Cristobal's theory, her credit report deviated from Metro 2 because the CII field was left blank when it should have been filled with code "D." ECF No. 1 ¶¶ 84, 137. That deviation "will prompt those making credit decisions to draw a more negative inference regarding [her] creditworthiness," id. ¶¶ 64-66, and could lower her credit score because FICO's "algorithms" are premised on compliant Metro 2 data, id. ¶¶ 47-49. ***In a world of big data, it is plausible that an algorithm designed to calculate Cristobal's FICO score based on the Metro 2 codes might not generate the same score just because the word "bankruptcy" appears elsewhere on the report.***

*Cristobal*, No. 16-cv-06329-JST, 2017 U.S. Dist. LEXIS 63571 at *13-*14 (emphasis added); *see also Conrad v. Experian Info. Sols., Inc.*, No. 16-cv-04660 NC, 2017 U.S. Dist. LEXIS 68641, at *17 (N.D. Cal. May 4, 2017)("The people making such decisions about Conrad may not have known of the bankruptcy because of the use of algorithms in calculating a consumer's credit score.").

Indeed, a recent pay status case has _confirmed_ Plaintiff's algorithm theory in the context

of the FCRA. *See Heppinstall v. T.D. Bank, USA, N.A.*, 2:22-cv-00188-WB, at 2 n.1 (E.D. Pa.

June 3, 2022). The court reasoned,

> The Complaint alleges that creditors make credit lending decisions based on credit
> scores that are automatically generated by algorithms, and that these algorithms
> yield a lower score if the status field reads "charge off" instead of "closed," because
> that field "is specifically designed to be understood as the current status of the
> account." Whether and how Heppinstall's score was impacted by such algorithms'
> computation of the various fields in his credit report is relevant to the perspective
> of the reasonable twenty-first-century creditor, Fernandez, 2021 WL 3857864, at
> *3, which relies on such scores to screen credit applicants.

2:22-cv-00188-WB, at 2 n.1. These cases illustrate the modern reality that A.I. will often dictate,

as it does here, the outcomes of credit decisions based on a reporting regime that freely uses an

automated process through algorithms.

The reasoning of two other cases rejecting similar claims outside this jurisdiction, *O'Neal*

*v. Equifax Info. Servs.*, No. 21-CV-80968-RAR, 2021 U.S. Dist. LEXIS 206883 (S.D. Fla. Oct.

27, 2021) and *Pineda v. Trans Union, LLC*, No. 2:21-cv-653-SPC-MRM, 2021 U.S. Dist. LEXIS

233631 (M.D. Fla. Dec. 6, 2021), is unpersuasive. *O'Neal*'s chief concern was that the plaintiffs

were simply ignoring the relevant standard under *Erickson v. First Advantage Background Servs.*

*Corp.*, 981 F.3d 1246 (11th Cir. 2020), which *O'Neal* necessarily relied on. *See* No. 21-CV-

80968-RAR, 2021 U.S. Dist. LEXIS 206883 at *8. But *Erickson*'s standard was developed with

a healthy set of assumptions in mind: that a creditor would take the time to pore over the details of

a credit report and make determinations of creditworthiness based on a holistic assessment of that

report. *See cf. Erickson*, 981 F.3d at 1253 ("Little League knew that it would get what it asked for

here—a search based only on first and last name. And it also knew that it could not attribute any

of those matched records to an applicant without conducting further research first.").

Given the reality that the Account Status section is inaccurately viewed as a current status by credit scoring algorithms regardless of additional tradelines which might indicate otherwise, *see Conrad*, No. 16-cv-04660 NC, 2017 U.S. Dist. LEXIS 68641 at *16-*17, it behooves this Court to consider the very real fact that those algorithms operate in such a way as to defy *Erickson*'s guidance. The law must keep pace with the times and not be made prisoner to old notions that have little relevance in today's modern world, else it becomes a relic.[2]

*O'Neal* expressed the further concern that "[h]ow third-party companies choose to utilize algorithms to decipher the accurate information reported by Defendant has no bearing on the accuracy of the report itself." *See* No. 21-CV-80968-RAR, 2021 U.S. Dist. LEXIS 206883 at *8. However, standing in the shoes of the reasonable creditor, as credit scoring algorithms do in this case, is itself a basis for finding inaccuracies in a credit report when judged from the perspective of that user. *See Erickson*, 981 F.3d at 1253 ("A reasonable user of the report standing in the shoes of Little League…"). Under *Erickson*'s guidance, one is simply substituted for another. Plaintiff's algorithm theory therefore reaffirms that _some third-party entity_ necessarily interacts with the credit report, the inevitable implications of the *Erickson* standard. *See* 981 F.3d at 1253. Just as the reasonable user was imagined to be stepping in the shoes of the actual user in the *Erickson* case, so too do the credit scoring algorithms stand in the shoes of potential creditors reviewing the BOA tradeline, thus supplanting that reasonable user and making an entirely _unreasonable_

---

[2] *See e.g. City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 119 S. Ct. 1624, 728 (1999)(Scalia, A., concurring)(noting that "the attributes of § 1983 could change to keep up with modern developments in the law of torts: '*Doctrines of tort law have changed significantly over the past century, and our notions of governmental responsibility should properly reflect that evolution.*'")(citations omitted)(emphasis added); *see also Malone v. United States* , 791 F. App'x 543, 546 (6th Cir. 2019)("[G]eneric burglary includes common law burglary—'breaking and entering a dwelling at night with intent to commit a felony'—*but, it also 'must include more' than the common law definition to be relevant to 'modern law enforcement concerns.*'")(quoting *United States v. Stitt*, 139 S. Ct. 399, 405 (2018))(emphasis added).

_assertion_ about the overall account, one that suggests that the debt was never ultimately satisfied. This is what the credit report suggests, and how the credit scoring algorithms indeed interpret the account. _Erickson_'s standard is thus unavailing in this context.

Moreover, the notion that Congress should be the only one to update statutes that are waning in relevance compared to the latest technological developments happening in the world, _see Pineda_, No. 2:21-cv-653-SPC-MRM, 2021 U.S. Dist. LEXIS 233631 at *8, has been rejected in other legislative contexts. Under the Americans with Disabilities Act ("ADA"), for example, courts have expanded the ADA's reach to cover websites without any connection to a physical retail location.[3] Indeed, cases have consistently recognized the revolutionary changes that have been handed down to our society in a relatively short period of time, and the impact that has had on judicial decision-making.[4]

---

[3] _See Markett v. Five Guys Enters. LLC_, No. 17-cv-788 (KBF), 2017 U.S. Dist. LEXIS 115212, at *4-5 (S.D.N.Y. July 21, 2017)("[T]he text and purposes of the ADA, as well as the breadth of federal appellate decisions, suggest that defendant's website is covered under the ADA, either as its own place of public accommodation or as a result of its close relationship as a service of defendant's restaurants, which indisputably are public accommodations under the statute."); _see also Del-Orden v. Bonobos, Inc._, 2017 U.S. Dist. LEXIS 209251, at *32 (S.D.N.Y. Dec. 20, 2017)(holding that "the ADA extends to Bonobos' website … because the ADA … applies to private commercial websites as places of 'public accommodation'"); _see also Harty v. Nyack Motor Hotel, Inc._, No. 19-CV-1322 (KMK), 2020 U.S. Dist. LEXIS 40429, at *9-10 (S.D.N.Y. Mar. 9, 2020)(collecting cases).

[4] _See United States v. Peterson_, 248 F.3d 79, 83 (2d Cir. 2001)(in applying the ADA to the internet, the court remarking, "Computers and Internet access have become virtually indispensable in the modern world of communications and information gathering."); _see also Del-Orden v. Bonobos, Inc._, 2017 U.S. Dist. LEXIS 209251, at *24 (S.D.N.Y. Dec. 20, 2017)(in applying same, remarking, "Today, few areas are more integral to 'the economic and social mainstream of American life,' than the Internet's websites.")(citation omitted); _see also Packingham v. North Carolina_, 137 S. Ct. 1730, 1735, 198 L. Ed. 2d 273 (2017)(quoting _Reno v. Am. Civil Liberties Union_, 521 U.S. 844, 868, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997))(in holding that the First Amendment's free speech protections applied to an internet venue, the Court noting, "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet … .'").

These cases establish a clear proposition that allows courts and the caselaw to evolve their understanding of the law as the world around them changes. Courts are not bound by narrow proscriptions of the law, or even at times, the literal language of a statute, but may expand that to consider scenarios not initially contemplated by Congress. Here, that is no great feat of interpretation. If the courts have seen fit to apply the ADA's public accommodation requirement to internet websites that have no real-world connection to physical establishments, when the statute itself contains no obvious mention of the internet and was passed well before the internet came of age, Congress never having occasion to consider the explosion of online shopping that has dramatically shifted the consumer retail market, then a clear line can be drawn from the third-party interaction necessarily contemplated by *Erickson* in the context of potential creditors, who, *as third parties*, are interpreting credit reports, and credit scoring algorithms which stand in the shoes of those potential creditors and do the interpretive work for them. This is much less of an interpretive leap than the ADA cases, and *O'Neal*'s and *Pineda*'s decisions stand in clear opposition to the U.S. Supreme Court's general guidance on this issue.

**V.    <u>CONCLUSION</u>**

For the reasons set forth above, Defendant's motion for judgment on the pleadings should be denied in its entirety.

Dated:  June 24, 2022                              Respectfully Submitted,

**STEIN SAKS, PLLC**

*/s/ Yaakov Saks*_____
By: Yaakov Saks, Esq.
One University Plaza, Ste 620
Hackensack, NJ 07601
Phone: (201) 282-6500 ext. 101
Fax: (201)-282-6501
ysaks@steinsakslegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**STEIN SAKS, PLLC**

*/s/ Yaakov Saks*
By: Yaakov Saks, Esq.
One University Plaza, Ste 620
Hackensack, NJ 07601
Phone: (201) 282-6500 ext. 101
Fax: (201)-282-6501
ysaks@steinsakslegal.com