IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAVIER ANGULO, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 22 C 923 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| TRUIST BANK d/b/a Sheffield Financial, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Javier Angulo, Jr. alleges Defendant Truist Bank, doing business as Sheffield Financial ("Sheffield"), willfully and negligently violated the Fair Credit Reporting Act by failing to conduct a reasonable investigation of inaccurate information reported to Equifax Information Services, LLC. (Dkt. 1). After this Court dismissed Angulo's Complaint for lack of standing, (dkt. 26), Angulo filed his First Amended Complaint ("FAC"), (dkt. 27). Sheffield again moves for judgment on the pleadings. (Dkt. 30). The Court concludes Angulo has still failed to allege facts sufficient to confer standing to bring his claims, grants Sheffield's Motion [30] and dismisses the Complaint, this time with prejudice.

### BACKGROUND

The Court assumes familiarity with the background of this case from its prior opinion. *See Angulo v. Truist Bank*, No. 22 C 923, 2022 WL 14632991, at *1–*2 (N.D. Ill. Oct. 25, 2022). Angulo had a credit account at Truist Bank, known as Sheffield Financial. (Dkt. 27 ¶ 8). He paid off and closed the account. (*Id.* ¶ 10; *see also* dkt. 32-2 at 41–42). Sheffield reported the closed account's payment status as "30 days past due" to Equifax Information Services, LLC,[1] which

---

[1] Plaintiff settled his dispute with Equifax, which is no longer a defendant in this action. (Dkt. 12; Dkt. 21).

1

prepared Angulo's credit report showing the account's status as "NOT_MORE_THAN_TWO_PAYMENTS_PAST_DUE." (Dkt. 27 ¶¶ 8–9, 12). The credit report also shows that Angulo's account was closed in January 2020; that the last payment was made on January 1, 2020; that it has a $0.00 balance, 0% debt-to-credit ratio, $0 scheduled payment amount; and it has a payment history with a "30" notation for the months of March 2019, July 2019, and December 2019. (Dkt. 32-2 at 41–42).

After Angulo notified Equifax that he disputed the accuracy of the Sheffield account's pay status on his credit report, Equifax informed Sheffield. (Dkt. 27 ¶¶ 18–19). Angulo claims that Sheffield failed to conduct a reasonable investigation of the accuracy of the information furnished to Equifax. (*Id.* ¶¶ 20–22). Sheffield continues to report the same "past due" account information, and Angulo's credit report with this inaccurate information has been disseminated to third parties. (*Id.* ¶¶ 21–23). Angulo claims that Sheffield's failure to perform its obligations under the Fair Credit Reporting Act caused dissemination of false or misleading information. (*Id.* ¶ 25). He also claims he suffered "loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial related to the dissemination of the inclusion of the inaccurate information on [his] credit reports." (*Id.* ¶ 26).

Sheffield denies furnishing inaccurate or misleading information to Equifax. (Dkt. 13).[2] Sheffield moves again for judgment on the pleadings contained in Angulo's First Amended Complaint (FAC) and its Answer. (Dkt. 30).

---

[2] Sheffield did not answer the FAC and relies on its Answer to Angulo's original Complaint. The FAC contains essentially the same factual allegations as the original Complaint, adding only a list of six third parties that received the information contained in Angulo's credit report: Circle Buick GMC Inc.; Credit Karma, Inc.; the Home Depot – Citi NA; Dealertrack, Inc.; Celtic Bank; and Truecredit/TUS. (Dkt. 27). Sheffield does not dispute these entities received Angulo's credit report, only the legal consequences of the report's dissemination. (Dkt. 29).

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The same standard governs a Rule 12(c) motion for judgment on the pleadings as a Rule 12(b)(6) motion to dismiss. *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). To survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Denan v. TransUnion LLC*, 959 F.3d 290, 293 (7th Cir. 2020). In ruling on a Rule 12(c) motion, the Court considers the pleadings, including the complaint and answer, and may also consider documents incorporated by reference to the pleadings and matters properly subject to judicial notice. *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017). "As with a motion to dismiss, the court views all facts and inferences in the light most favorable to the non-moving party." *Federated Mut. Ins. Co. v. Coyle Mech. Supply, Inc.*, 983 F.3d 307, 313 (7th Cir. 2020).

## DISCUSSION

"Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (quoting *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988)). To have standing, a plaintiff first "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). Next, the plaintiff must show how the defendant's conduct caused his injury. *Lujan*, 504

3

U.S. at 560 ("[T]he injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (cleaned up)). Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

The plaintiff must support each element of standing to sue "with the [same] manner and degree of evidence required at the successive stages of the litigation." *Id.* "At the pleading stage, the plaintiff must allege facts that demonstrate each element of Article III standing." *Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 877 (7th Cir. 2020).

Angulo's allegations fail once more to show that he plausibly suffered an injury in fact from Sheffield's reporting to Equifax the pay status as "past due" on his closed account. Even assuming this pay status is inaccurate or misleading and thus violates the Fair Credit Reporting Act (FRCA), "[i]dentifying a violation of a statutory right does not automatically equate to showing injury-in-fact for standing purposes." *Crabtree*, 948 F.3d at 877 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016)). An injury in fact must be concrete, which encompasses both traditional pecuniary harms as well as "[v]arious intangible harms," such as "reputational harms." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).

Relying on *TransUnion LLC v. Ramirez*, Angulo argues that the mere publication of this inaccurate information to third parties constitutes a concrete injury because it bears a close relationship to the intangible reputational harm vindicated by the common-law tort of defamation. (Dkt. 27 ¶¶ 24–25; dkt. 32 at 3–9). In that case, TransUnion placed a "name alert" on the credit reports of consumers who happened to share first and last names with individuals on the United States' Office of Foreign Assets Control's (OFAC) Terrorist Watch List. 141 S. Ct. at 2208–09.

4

The Court held that the dissemination of credit reports containing OFAC alerts harmed plaintiffs because "a person is injured when a defamatory statement 'that would subject him to hatred, contempt, or ridicule' is published to a third party." *Id.* at 2208 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13 (1990)). The Court emphasized, however, that "TransUnion provided third parties with credit reports containing OFAC alerts that labeled the class members as potential terrorists, drug traffickers, or serious criminals." *Id.* at 2209. Labeling someone a "potential terrorist" is inherently harmful, and "the harm from a misleading statement *of this kind* bears a sufficiently close relationship to the harm from a false and defamatory statement." *Id.* (emphasis added).

In *TransUnion*, the plaintiffs with OFAC name alerts on their credit reports suffered a concrete injury because the published statements are analogous to defamation per se.[3] A false statement that someone is or may be a terrorist inherently injures that person's reputation even if no pecuniary or economic harm directly results. *See* Restatement (Second) of Torts § 570 (Am. L. Inst. 1977) (imputing liability for defamation even if no special harm results where the publication imputes that the plaintiff committed a criminal offense). But not all false and defamatory statements are actionable. *See id.* § 558 ("To create liability for defamation there must be: . . . either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."). To be actionable, defamation generally requires special harm: "the loss of something having economic or pecuniary value." *Id.* § 575 cmt. b. In other words, the defamatory statement must have impacted the person's reputation in a measurable way. Or, as the

---

[3] The named plaintiff in *TransUnion* also suffered concrete pecuniary harm: because of the OFAC alert, he was denied credit to purchase a car. 141 S. Ct. at 2201. At the class certification stage, the district court concluded that Ramirez's claims were typical of the class's claim. *Id.* at 2202. The Court did not address "the distinct question whether every class member must demonstrate standing before the court certifies a class." *Id.* at 2208 n.4. But because the Court focused its analysis on the reputational harm that an OFAC alert inherently causes by its publication, the *TransUnion* Court held that class members need not pecuniary harm under these circumstances.

5

Seventh Circuit has observed, "[i]t is not enough to say that your reputation was harmed without explaining how." *Crabtree*, 948 F.3d at 880.

Here, Angulo focuses on the element of publication of false information to argue he suffered a concrete injury analogous to that of the reputational injury associated with common-law defamation. That is a necessary—but not sufficient—element. Angulo must still allege facts that plausibly show how his reputation suffered from the dissemination of false or misleading information. That his credit report shows one instance of a closed, zero-balance account's status as "past due"—even if inaccurate or misleading—is a far cry from being labeled a potential terrorist. Angulo must articulate how this inaccuracy harmed his reputation in a tangible way, not merely that it was published to third parties. *See Crabtree*, 948 F.3d at 877 ("While any small error in a consumer report might violate FCRA, . . . 'not all inaccuracies cause harm or present any material risk of harm' and therefore not all inaccuracies amount to an injury sufficient to confer Article III standing." (quoting *Spokeo, Inc.*, 578 U.S. at 342)); *see also, e.g.*, *In re FDCPA Mailing Vendor Cases*, 551 F. Supp. 3d 57, 64 (E.D.N.Y. 2021) (finding that even inaccurate data reporting *de minimis* outstanding debts to third parties, without allegations of harm resulting from this dissemination, did not confer standing as it failed to analogize to the common law tort of defamation). In this context, whether the alleged defamatory statement in Angulo's credit report is actionable turns on the harm it caused to his reputation.

Angulo has again failed to allege that he experienced any reputational injury. Although at least six entities received his credit report, Angulo does not state that he had lost out on credit opportunities, from these entities or others. First, he did not allege having applied for credit from any of them. This undercuts any plausible inference that he sought to benefit from his financial reputation with them. *Cf. Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 334 (7th Cir. 2019)

6

(holding that plaintiff suffered no injury from a bare procedural violation of the Fair Debt Collection Practices Act when she had no intention of using the information she was statutorily entitled to receive). If he never applied for credit with these companies, then it is hard to see how their assessment of his creditworthiness could have mattered.

Moreover, Angulo pleads no facts showing he ever lost credit opportunities, received unfavorable credit terms in any financial transactions, nor even suffered a drop in his credit score from the reported information. *Cf. Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1190–91 (7th Cir. 2021) (finding no concrete injury of reputational harm where plaintiff, on summary judgment, failed to support allegation of injury to credit rating and had never been denied housing, credit, employment, or insurance); *see also, e.g.*, *Reimer v. LexisNexis Risk Sols., Inc.*, No. 22cv153, 2022 WL 4227231, at *7 (E.D. Va. Sept. 13, 2022) (finding plaintiff failed to allege concrete injury where he offered no factual support for alleged injuries nor alleged any drop in his credit score or denial of credit). If Angulo's financial reputation was unaffected by the inaccurate information, then he suffered no concrete injury. As in his prior Complaint—which this Court dismissed for lack of standing—Angulo asserts without any factual support that he suffered "loss of credit" and "loss of ability to purchase and benefit from credit." (Dkt. 27 ¶ 26). This boilerplate recitation of his injuries is not enough. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that a complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement" (internal quotation and citation omitted)). He also reasserted that he suffered the "humiliation and embarrassment of credit denial." (Dkt. 27 ¶ 26). But without pointing to any instances of credit denial, this allegation falls short. *See Crabtree*, 948 F.3d at 880. Finally, even if Angulo had pleaded facts showing a loss of financial reputation, he would also have to show that Sheffield's

7

inclusion of this single inaccuracy—rather than some other factor—caused this injury. *See Lujan*, 504 U.S. at 560.

## CONCLUSION

Angulo's First Amended Complaint fails to plead sufficient facts showing he experienced an injury in fact; therefore, he lacks standing to pursue his claims against Sheffield. Because he has twice failed to show standing, the Court grants Sheffield's Motion and dismisses the Complaint with prejudice. [30]

                                                                                                      _____
                                                                                                      Virginia M. Kendall
                                                                                  United States District Judge

Date: February 9, 2023